STATE OF CONNECTICUT *v.* PAULA CHERNOV

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 14-73344

Argued April 15—decided May 3, 1968

374

*Edwin A. Lassman,* of Hartford, for the appellant (defendant).

*Edward R. Smoragiewicz,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant, operating under a package store liquor permit (General Statutes § 30-20 [a]) granted her by the liquor control commission, was charged in an information with a violation of the provisions of her permit, namely, that on or about June 21, 1967, she sold alcoholic liquor to a minor. General Statutes § 30-86. It is undisputed that she sold two king-size packs of Knickerbocker beer, one six-pack of Budweiser beer and one quart of Schaefer beer to Michael Pascoe, a minor, being a "person under twenty-one years of age." § 30-1(12).

At the trial, the packs of beer were identified as the same as those sold by the defendant to Pascoe, were introduced in evidence without objection, and were examined by the jury. The defendant neither testified nor offered any evidence in her own behalf. At the close of the state's case, the defendant moved for dismissal of the information. The motion was based on the insufficiency of the evidence to warrant submitting the question of the defendant's guilt to the jury; more specifically, on the ground that there was no evidence, or at most insufficient evidence, for the case to go to the jury on the question whether the liquor contained more than one-half of one percent of alcohol by volume. The court denied the

motion. The jury returned a verdict of guilty, which the court on motion refused to set aside. Judgment was rendered on the verdict.

On the question of the character of the liquor involved in this case, the court charged the jury as follows: "Now, the next question for you to determine is whether or not this is alcoholic liquor within the meaning of the statute. It is perfectly obvious that if this was Coca Cola or Ginger Ale or anything else other than beer then, of course, the state would feel compelled to withdraw because the sale must be of alcoholic beer or liquor. Now, in interpreting the statute dealing with the Liquor Control Act, beer is included as alcoholic liquor, and a very nice definition which the statute reads up here says: ' "Beer" means any beverage obtained by the alcoholic fermentation of an infusion or decoction of barley, malt and hops in drinking water.' That's a question of fact for you to determine because there's been no expert introduced to testify as to what the contents of these packages contain, but it's a question of fact for you to determine what's in those packages. If you find it's beer, then it's alcoholic liquor within the meaning of the statute, but it's for you to determine what it is." The defendant duly excepted to the charge as given.

The basic claim on this appeal is that the court erred in its charge to the jury in failing to include an instruction to the effect that, before they could bring in a verdict of guilty, they must find that the beer contained in excess of one-half of one percent of alcohol by volume.

The Liquor Control Act "subjects to criminal prosecution any permittee who by himself, his servant or agent shall sell or deliver alcoholic liquor to any minor, and alcoholic liquor is defined by the statute to include beer." *Rose* v. *Liquor Control*

*Commission,* 124 Conn. 689, 690; see General Statutes §§ 30-86, 30-113. "Beer with an alcoholic content of less than one half of one per cent by volume, or 'near beer' is not within the definition of alcoholic liquor or controlled by the Liquor Control Act." *State* v. *Koenig,* 120 Conn. 39, 42; see § 30-1 (2). " '[B]eer' is a term applied to so many nonintoxicating drinks that evidence of its qualities in a given instance may well be required." 9 Wigmore, Evidence (3d Ed.) § 2582, p. 579; see *State* v. *Malone,* 238 Mo. App. 939, 945.

"On a trial for selling intoxicating liquors in violation of law, it is necessary to show by the evidence that the liquor sold was intoxicating." Black, Laws Regulating the Manufacture and Sale of Intoxicating Liquors § 521; see Joyce, Intoxicating Liquors § 673. Chemical analysis is not the exclusive method of ascertaining the intoxicating character of the liquor. *State* v. *Abraham,* 158 La. 1021, 1023; *State* v. *Watson,* 99 Vt. 473, 477; see *State* v. *Feldman,* 2 Conn. Cir. Ct. 476, 479. "The determination of the species of liquor sold is not a question for expert testimony exclusively." Black, op. cit. § 520, p. 614. Moreover, "[p]roof that the substance was intoxicating is sufficient without proof of the percentage of alcohol it contained." 48 C.J.S. 556, Intoxicating Liquors, § 371 (d) (3). For the purpose of determining the kind of liquor which was sold, it was competent for the jury to consider its appearance; *Freyaldenhoven* v. *State,* 217 Ark. 484, 485; *State* v. *Thomas,* 177 Kan. 230, 232; *Witten* v. *State,* 95 Tex. Cr. 42, 45; its smell; *Burke* v. *State,* 235 Ark. 882, 884, cert. denied, 373 U.S. 922; *People* v. *Savage,* 225 Mich. 84, 86; *Carver* v. *State,* 190 Wis. 234, 237; and stamps, tags, labels or other markings on the bottles. 48 C.J.S. 549, Intoxicating Liquors, § 371 (c) (1); 30 Am. Jur., Intoxicating Liquors, § 354; note, 78 A.L.R. 439. "It is proper

. . . to permit the jury to look at and smell the liquor alleged to be intoxicating, for the purpose of determining its character. It is like shutting their eyes to the truth to do otherwise." *Enyart* v. *People,* 70 Colo. 362, 363. "When liquor is introduced in evidence, jurors are allowed to look at it, and to take into consideration its color and appearance in deciding what they think it is . . . . After the liquor in this character of a case has been received in evidence, to deny jurors the right to look upon it, smell of it, and take into consideration its appearance and odor in determining what it is, results in closing their eyes against the acquisition of the truth. These views have been expressed by the great weight of authority throughout the several states which have had occasion to consider the question." *State* v. *Dascenzo,* 30 N.M. 34, 36, 67.[1]

In *State* v. *Koenig,* supra, a prosecution for delivering alcoholic liquor to a minor, a glass of beer was served by the permittee to a fourteen-year-old boy who was standing at the bar with his father and another man.[2] That man had ordered the beer, and the permittee had drawn it and placed it on the bar with full knowledge of the boy's age and that the

---

[1] As to whether the jury should be permitted to taste or smell the liquor, see notes, 25 Mich. L. Rev. 198, 23 Mich. L. Rev. 299.

[2] We have examined the charge as given by the trial court *(Waller, J.)* in *State* v. *Koenig,* 120 Conn. 39. A-70 Rec. & Briefs 262, 266. The court charged the jury that it was an admitted fact that the defendant held a permit from the liquor control commission—a permit to sell alcoholic liquor and a permit of the class called a restaurant permit. It was also an admitted fact that at the time alleged in the information the defendant was carrying on the business of a restaurant keeper and selling alcoholic liquor at his place of business in the town of Sprague. The trial court went on to say (p. 267) that "the beer which the minor received was alcoholic liquor within the definition of alcoholic liquor under the Liquor Control Act." Nowhere does it appear in the charge that the trial court instructed the jury that they must find that the beer which the minor consumed on the premises contained in excess of one-half of one percent of alcohol by volume.

beer was to be consumed by him. The court said (p. 42) : "There was no evidence and no claim made at the trial that this beer was other than beer handled under the defendant's permit and hence alcoholic liquor." And in *Barnes* v. *Commonwealth,* 305 Ky. 481, the defendant was convicted of unlawfully having in his possession thirty cases of "Red Top" and "Budweiser" beer. The court said it deemed it unnecessary to discuss the statutory definition of alcoholic liquor because (p. 483) "it is a matter of common knowledge that beer, especially such well known brands as were found in the possession of appellant, contains more than one per centum of alcohol by volume." "Thus, evidence showing that a customer called for beer and was given liquor that looked like beer, with other evidence of like nature, will be sufficient to throw upon the defendant the burden of disproving the intoxicating character of the liquor." Black, op. cit. § 521, p. 617.

In the instant case, the packages in evidence are well-known and nationally advertised brands of beer. Moreover, as the trial court observed in its memorandum of decision denying the motion to set aside the verdict, "beer was mentioned like it was flowing freely in the case." "It was called that, it was labeled that, and it was so referred to throughout the case." *Dixon* v. *State,* 159 Tex. Cr. 258, 262.

In the final analysis, "[w]hether the liquor in question was 'alcoholic liquor' within the . . . [statutory definition] is a question of fact. Like any other fact it may be established by any relevant evidence, direct or circumstantial, or by inferences reasonably drawn from other competent facts established." *State* v. *Boucher,* 119 Conn. 436, 439.

There is no error.

In this opinion KOSICKI and WISE, Js., concurred.